# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

NIDAL HAMAD

**FILED**
KC
NOV 0 2 2007
November 2, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07CR 726**
CRIMINAL COMPLAINT
MAGISTRATE JUDGE KEYS

CASE NUMBER:

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __October 31, 2007__ in __Cook__ County, in the __Northern__ District of __Illinois, Eastern Division__ defendant(s) did, (Track Statutory Language of Offense)

Attempt to possess with intent to defraud in excess of fifteen unauthorized access devices, namely, stolen cellular telephones and SIM cards;

in violation of Title __18__ United States Code, Section(s) __1029(a)(3) and (b)(1)__.

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following facts:
Official Title

See Attached Affidavit

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

Special Agent Joel Heffernan
United States Secret Service

Sworn to before me and subscribed in my presence,

__November 2, 2007__
Date

at __Chicago, IL__
City and State

__Magistrate Judge Arlander Keys__
Name & Title of Judicial Officer

Arlander Keys
Signature of Judicial Officer

STATE OF ILLINOIS    )
                     )
COUNTY OF COOK       )

## AFFIDAVIT

I, JOEL HEFFERNAN, state as follows:

1. I have been employed by as a Special Agent with the United States Secret Service since June of 2003. I am currently assigned to the Chicago Field Office, Financial Crimes Squad. As part of my duties, I investigate financial crimes, such as counterfeit checks, access device fraud, bank fraud and forgery. I have received training in the areas of counterfeit checks, access device fraud, bank fraud and forgery.

2. This affidavit is based on my personal knowledge, as well as information obtained from official documents and the personal knowledge of other law enforcement officials.

3. This affidavit is submitted in support of a complaint that there is probable cause to believe that Nidal HAMAD did Attempt to possess with intent to defraud in excess of fifteen unauthorized access devices, namely, stolen cellular telephones and SIM cards in violation of Title 18 of the United States Code, Section 1029(a)(3) and (b)(1).

4. This affidavit does not contain all of the information known to law enforcement regarding this investigation, but rather, contains only those facts believed to be necessary to establish probable cause.

*Delivery of Cellular Phones*

5. Cooperating Source 1 (CS1) is an individual with three felony convictions who was identified by law enforcement as having been involved in this scheme of fraudulently obtaining Sprint / Nextel phones and selling them to Nidal HAMAD at the SUBJECT

PREMISES. CS1 is currently facing a violation of probation charge as well as a state identity theft charge, and agreed to cooperate in this investigation in the hope of helping with the charges that he/she is facing. CS1 admitted to ordering/receiving fraudulent phones from Sprint /Nextel by changing the shipping address of legitimate Sprint / Nextel account holders and ordering upgraded phones to be sent to the new address. CS1 would then sell these fraudulently obtained phones to multiple individuals, but primarily to a person he knew as "Nick." When CS1 would sell phones to "Nick," the transaction would take place at the SUBJECT PREMISES. CS1 admitted that he/she had been engaged in this scheme for several years.

6. On or about October 16, 2007, law enforcement agents met with CS1 and equipped him/her with audio and video recording devices. Law enforcement agents then observed CS1 as he/she entered a location believed to be involved in the purchasing of fraudulently obtained phones. There, CS1 spoke with Individual A. This conversation was recorded with both audio and video. CS1 informed Individual A that he/she had cellular phones that he/she would like to sell to Individual A. During this conversation, Individual A acknowledged that he had bought cell phones in the past, but informed CS1 that he was no longer buying phones and that CS1 should contact "Nick" to deliver the phones to "Nick". CS1 understood Individual A to mean that "Nick" would then deliver the phones to Individual A.

7. On or about October 30, 2007, at approximately 4:45 p.m., CS1 was contacted by "Nick" and was told to bring the phones that he had to "Nick's" cell phone store located at 147th and Wood in Harvey, Illinois. During this conversation, "Nick" told CS1 to be careful in coming down to the store as he had previously observed a police takedown occur in front of his store. In relaying the contents of this conversation, CS1 was able to provide specific details of this police

takedown that would otherwise be unknown to him. This conversation was not recorded, but the specific details provided by CS1 regardin g the takedown match information known to the Secret Service.

8. Later that same day, at approximately 6:00 PM, CS1 placed a recorded call to "Nick" and informed him that he had 20 phones to sell right now, and had 20 more that he needed to retrieve from his girlfriend's home. "Nick" asked CS1 to bring the initial 20 phones to the SUBJECT PREMISES at approximately 8:00 PM. Later that same day, at approximately 6:00 PM, CS1 placed a recorded call to "Nick" and informed him that he/he/she had 20 phones to sell right now, and had 20 more that he/he/she could retrieve relatively soon. "Nick" asked CS1 to bring the initial 20 phones to his store at approximately 8:00 PM.

9. At approximately 8:00 PM, law enforcement observed CS1 arrive at "Nick"'s store and deliver 20 Nextel Model i880 cell phones and corresponding SIM cards to "Nick" in exchange for approximately $1800 in cash. This transaction and associated conversation were also recorded on both audio and video. Additionally, "Nick" agreed to forgive a $200 debt CS1 owed to "Nick". CS1 informed "Nick" that he would have the 20 additional phones in the morning. "Nick" asked CS1 to return to the store the following morning at approximately 8:00 AM. The 20 Nextel cell phones that were delivered in this transaction were provided by Sprint Corporate Security. During this meeting, CS1 observed a pistol in the waistband of "Nick". CS1 was searched for United States currency and contraband immediately before and after this transaction. After the transaction, CS1 had $1800 on his person. CS1 surrendered this money to Secret Service agents. 10. At approximately 8:30 AM on or about October 31, 2007, CS1 again met with "Nick" at the cell phone store located at 147th and Wood. During this

meeting, CS1 delivered an additional 20 Nextel Model i880 phones and corresponding SIM cards. This transaction and associated conversation were also recorded on both audio and video. Again these phones were provided by Sprint Corporate Security. "Nick" paid CS1 $1550 in cash and promised to pay him an additional $450 in a few days. CS1 was searched for United States currency and contraband immediately before and after this transaction. After the transaction, CS1 had $1550 on his person. CS1 surrendered this money to Secret Service agents.

11.  Secret Service maintained visual surveillance of "Nick" during portions of the day on October 31, 2007. During this time, law enforcement agents were able to visually identify the green duffle bag delivered to "Nick" the previous evening as being placed in the trunk of "Nick's" car. Law enforcement agents were also able to visually identify the additional 20 phones delivered on the morning of October 31st as also being placed in the trunk of "Nick"'s car. "Nick's" car is a silver 2002 Mitsubishi Gallant bearing Illinois license plate number 985 3895.

*Arrest of "Nick"*

12. CS1 identified "Nick" by a driver's license photo to be Yahya Mohammad. On or about November 1, 2007, a warrant for the arrest of Yahya Mohammad was issued. On or about November 2, 2007, law enforcement agents arrested "Nick" at the SUBJECT PREMISES. Subsequent to his arrest, "Nick" was identified to actually be Nidal HAMAD. Law enforcement agents confirmed however that HAMAD is the same person who purchased the total of 40 phones from CS1. When HAMAD was arrested he had $4600, all in $50 and $100 denominations.

13. Before the arrest, law enforcement agents observed HAMAD drive to the

SUBJECT PREMISES in the silver Mitsubishi described above. Agents observed HAMAD park this car in front of, and then enter the SUBJECT PREMISES. Shortly thereafter, agents entered the SUBJECT PREMISES, and took him HAMAD into custody. While inside the SUBJECT PREMISES, agents were able to observe in plain view the same green duffle bag with black handles delivered to HAMAD containing the 20 Nextel phones on or about October 31, 2007. Agents also observed numerous other cell phone boxes stacked throughout the back portion of the SUBJECT PREMISES.

14. In my experience individuals engaged in the purchase, sale, or transportation of stolen or fraudulently obtained merchandise often use the items listed in Attachment B as a means of storing information or materials utilized in the purchase, sale, or transportation of such stolen or fraudulently obtained items.

15. Based on the aforementioned facts, your affiant respectfully requests that a criminal complaint be issued charging Nidal HAMAD with attempting to possess with intent to defraud in excess of fifteen unauthorized access devices, namely, stolen cellular telephones and SIM cardsin violation of Title 18 of the United States Code, Sections 1029(a)(1) and (b)(3).

FURTHER AFFIANT SAYETH NOT.

*[signature]*
Special Agent Joel Heffernan
United States Secret Service

SUBSCRIBED and SWORN to before me
this 2nd day of November, 2007

*[signature]*
Arlander Keys
United States Magistrate Judge